# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | | |
|---|---|---|
| TAB QUENTIN EVANS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Consolidated Case |
| v. | ) | No. 4:17-CV-1389 SPM |
| | ) | |
| BLANTON CONSTRUCTION CO., et al, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| _____ | ) | |
| | ) | |
| TAB QUENTIN EVANS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Associated Case |
| v. | ) | No. 4:17-CV-1390 SPM |
| | ) | |
| ST. LOUIS CARP. DIST. CNCL., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM AND ORDER</u>

This matter is before the Court on the motions to dismiss Plaintiff's Second Amended Complaint filed by each of the seven defendants in this case (Docs. 13, 14, 25, 36, & 40); Plaintiff's motion to amend his complaint to add an eighth defendant, Carpenter's Union Local #97, to the case (Doc. 49); and the motion filed by two of the defendants to strike to strike Plaintiff's motion to amend (Doc. 50). The motions have been fully briefed, and the parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636. (Doc. 33.) For the reasons stated below, the defendants' motions to dismiss will be granted, Plaintiff's motion to amend will be denied, and this case will be dismissed.

# I.    PROCEDURAL BACKGROUND

On April 25, 2017, Plaintiff Tab Quentin Evans, acting *pro se*, filed his original Complaint in this action. (Doc. 1). On the same date, he filed another complaint in a second case, *Evans v. St. Louis Carpenters District Council, et al.*, No. 4:17-CV-1390-SPM. On August 3, 2017, the Court identified several deficiencies in Plaintiff's Complaint and ordered him to file an amended complaint addressing those deficiencies. (Doc. 5). On August 24, 2017, Plaintiff filed an Amended Complaint in the instant action. (Doc. 7). On September 19, 2017, Plaintiff filed identical amended complaints in the two cases; in the instant case, that complaint was the Second Amended Complaint. On October 2, 2017, after finding that the two cases involved common questions of law and fact, the Court entered an order consolidating the second case into the instant case pursuant to Federal Rule of Civil Procedure 42. (Doc. 10). Plaintiff's Second Amended Complaint (Doc. 34) is at issue here.

# II.    FACTUAL BACKGROUND

Plaintiff is, or has been during several years prior to the filing this lawsuit, an apprentice carpenter and a member of the Union. He is also a Jehovah's Witness. He brings this action against one of his employers, Blanton Construction Co. ("Blanton"); his apprenticeship program, St. Louis Carpenters Joint Apprenticeship Program ("CJAP"); his union, St. Louis-Kansas City Carpenters Regional Council ("the Union"), identified in Plaintiff's Second Amended Complaint as St. Louis Carpenters District Council; an international labor organization, the United Brotherhood of Carpenters and Joiners of America ("UBC"), identified in Plaintiff's Second Amended Complaint as U.B.C.-International; the Department of Labor, Bureau of Apprenticeship and Training ("DOL-BAT"); the Department of Labor, Office of Apprenticeship ("DOL-OA"); and the Department of Labor, Employment and Training Administration ("DOL-ETA").

In his Second Amended Complaint, Plaintiff appears to allege generally that the defendants have engaged in, allowed, and/or covered up discrimination against him and others. In 2007, Plaintiff filed a grievance letter that all of the defendants are aware of (the "2007 Grievance"), complaining of discrimination and/or harassment by his employers and coworkers based on his religion and on a perception that he was gay, as well as complaining that he had been unable to get jobs and that the Union had given him poor references. The 2007 Grievance is attached as an exhibit to Plaintiff's Second Amended Complaint.[1] Plaintiff alleges that UBC conducted an investigation over a period of more than a year, but instead of giving the results of the investigation to Plaintiff, concealed its findings and referred Plaintiff to its lawyers. Plaintiff also alleges that at the outset of the investigation, he was told that they thought they "solved that problem" in St. Louis. Plaintiff asserts that UBC may be covering up its findings of a local affiliate breaking laws and procedures barring discrimination.

Plaintiff also alleges that records from his F.O.I.A. request will show that CJAP and the Union "confer[red] with their Counsel, and decide[d] 'this could make us look bad as a 'Parens

---

[1] Plaintiff does not specify who he sent the 2007 Grievance to, but the copy of the 2007 Grievance attached to his Second Amended Complaint indicates that it was address to "Mr. Mark Fusch/Carpenters Joint Apprenticeship Committee," and a received stamp indicates that it was received by the United States Department of Labor, Office of Apprenticeship, in March 2007. In the 2007 grievance, Plaintiff detailed his work history through 2007, which involved several instances in which he was hired, and shortly thereafter laid off, by various employers who are not parties to the instant action. He also described some short-term periods of training. In the letter, Plaintiff described several instances in which his fellow employees, his supervisors, his teachers, his apartment manager, and other unspecified individuals made remarks about his religion or about him being gay. He also stated that he was threatened with violence, was physically pushed, had someone disconnect his safety harness, and had someone paint one of his personal carpenter's tools pink. Plaintiff also stated that he attempted to work while laid off but was unable to get work; he asserted that it seemed that he was getting bad references from the Union. He also stated that he called work counselors and the hiring hall but failed to get work. He asserted that the Union, through its discriminatory conduct against him, potentially ruined his future career in construction by slandering his reputation based on a lie. He requested that the Carpenters Joint Apprenticeship Committee help with the problem by using its power to look into the matter.

Patriae' civil case and neglect[ed] their responsibility toward the apprentice." It is unclear what "this" is, but it may be the 2007 Grievance. Plaintiff also alleges that the Union chose to look out for its Union contractors, provided no Union representation for him, and did not "look into the 15 years of 'promiscuous hiring and firings' to see if it's discrimination or not."[2]

Plaintiff further alleges that records show that Union staff admit to telling Union contractors in advance that he was a Jehovah's Witness, which resulted in Union carpenter employees threatening him that if he was a Jehovah's Witness, they would take actions that could maim, paralyze, or kill Plaintiff. Plaintiff alleges that this occurred within one to two minutes of his starting a new job, without his having said anything. In the body of his Second Amended Complaint, Plaintiff does not state where or when this alleged incident took place. However, a review of the 2007 Grievance attached as an exhibit to his Second Amended Complaint shows that it occurred when he was working for McBride Builders in October of 2003. *See* 2007 Grievance, Doc. 34-1, at p. 13.

Plaintiff alleges that although the Union's Apprenticeship Standards Agreement and various laws and rules require the Union to help him secure work, the Union told D.O.L. that it was not required to supply work. He also alleges that the Union has continued "to discriminately lie to particular individuals, to whom they chose, and NOT place them on jobs."

Plaintiff also alleges that since his 2007 Grievance, the Union has changed its Collective Bargaining Agreement so that an individual only has ten days to file a grievance, which makes it easier to discriminate against individuals. He alleges that the Union tells employees that they are

---

[2] It is unclear what "15 years of promiscuous hirings and firings" refers to. The 2007 Grievance describes Plaintiff's hirings and firings from 2001 through 2007, but Plaintiff does not appear to allege any facts related to specific hirings or firings occurring during the ten years leading up to the filing of his Second Amended Complaint. He does mention one incident suggesting that Blanton Construction Company fired him, though it is unclear when that occurred.

allowed to be fired under the contract, which permits employers to point to nondiscriminatory reasons for firing employees. Specifically, Plaintiff alleges that Blanton Construction Co. sent a letter to Plaintiff in which they attributed his firing to the fact that "employees all refuse to work with [Plaintiff]." Plaintiff asserts that the Union's failure to look into the matter permits discrimination to occur. Plaintiff also suggests that "the employer" (presumably Blanton) was following the Union's lead in "wrongfully and discriminatorily firing the plaintiff."

Plaintiff also appears to allege that the Union and/or CJAP have failed to meet their "Affirmative Action Plan prerequisites." He suggests generally that "discrimination against the plaintiff and discrimination against fellow St. Louis minorities, against whomsoever they choose to discriminate against, for their race, for their religion, for their gender, for their personal choices, whomsoever they dislike, is discrimination against the rest of society."[3] Plaintiff seeks damages in the amount of $50,000,000.

Each defendant has filed a motion to dismiss the claims against it for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

### III. LEGAL STANDARD

When ruling on a Rule 12(b)(6) motion to dismiss, the court must accept as true all of the factual allegations in the complaint, but it need not accept legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim satisfies the plausibility standard "when

---

[3] Although Plaintiff references race discrimination in his Second Amended Complaint, he Plaintiff does not make any allegations regarding his race. Defendants state that Plaintiff is Caucasian. See Doc. 37, at 1.

the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

In applying these principles, the court must construe Plaintiff's *pro se* Second Amended Complaint liberally. *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004). Thus, "if the essence of an allegation is discernible, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Jackson v. Nixon*, 747 F.3d 537, 544 (8th Cir. 2014) (quoting *Stone*, 364 F.3d at 915). However, a *pro se* complaint "still must allege sufficient facts to support the claims advanced." *Stone*, 364 F.3d at 914.

"It is well-established that an amended complaint supercedes an original complaint and renders the original complaint without legal effect." *In re Wireless Telephone Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 928 (8th Cir. 2005). Thus, the Court considers only the allegations in Plaintiff's Second Amended Complaint and not those in earlier pleadings. The Court will also consider the 2007 Grievance, which is attached as an exhibit to the Second Amended Complaint. *See Abels v. Farmers Commodities Corp.*, 259 F.3d 910, 921 (7th Cir. 2001) ("[A]court ruling on a motion to dismiss under Rule 12(b)(6) may consider material attached to the complaint.").

## IV.   DISCUSSION

As a preliminary matter, the Court notes that Plaintiff's Second Amended Complaint does not make clear what specific claims Plaintiff is alleging against any of the defendants. The defendants appear to treat Plaintiff's allegations as raising possible claims of discrimination arising under Title VII of the Civil Rights Act of 1964 ("Title VII"). In his response in opposition to Defendants' motions, Plaintiff does not appear to dispute this characterization and does not

identify any other statutes under which his claims may arise.[4] The Court will liberally construe Plaintiff's Second Amended Complaint to include claims that the defendants violated Title VII by discriminating against him based on race, religion, sex, and/or perceived sexual orientation, as well as allegations that the defendants retaliated against him after he participated in protected activities.

The Court will consider separately the each of the motions to dismiss filed by the defendants.

### A. Blanton's Motion to Dismiss (Doc. 13)

It appears from the Second Amended Complaint that Blanton was, for some period, Plaintiff's employer. "Since [Title VII's] passage in 1964, it has prohibited employers from discriminating against their employees on any seven specified criteria." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 347 (2013). These criteria are race, color, religion, sex, national origin, the employee's opposition to employment discrimination, and the employee's submission of or support for a complaint that alleges employment discrimination. *Id.* (citing 42 U.S.C. § 2000e-2 & 2000e-3(a)). "To establish a prima face case of discrimination, a plaintiff must show (1) he is a member of a protected class, (2) he met his employer's legitimate expectations, (3) he suffered an adverse employment action, and (4) the circumstances give rise to an inference of discrimination." *Pye v. Nu Aire, Inc.*, 641 F.3d 1011, 1019 (8th Cir. 2011) (describing the elements in a case involving alleged race discrimination (citing *Wierman v. Casey's Gen. Stores*, 638 F.3d

---

[4] Plaintiff does appear to suggest in his Response that his claims include a claim of "breach of contract concerning the apprenticeship 'loan agreement.'" *See* Pl.'s Resp., Doc. 44, at 1. However, Plaintiff's Second Amended Complaint does not mention an apprenticeship loan agreement, does not mention a breach of contract claim, and does not include factual allegations that suggest that any defendant was a party to such an agreement or to suggest that any defendant breached such an agreement. Plaintiff may not amend his complaint through arguments raised in a brief in opposition to a motion to dismiss. *See, e.g., Morgan Distributing Co. v. Unidynamic Corp.*, 868 F.2d 992, 994 (8th Cir. 1999) ("[I]t is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss.") (quotation marks omitted).

984, 993 (8th Cir. 2011)). *See also Wells v. SCI Mgmt., L.P.*, 469 F.3d 697, 700 (8th Cir. 2006) (outlining those elements in the gender discrimination context). The fourth part of the prima facie case may be satisfied "in a variety of ways, such as by showing more-favorable treatment of similarly-situated employees who are not in the protected class, or biased comments by a decisionmaker." *Pye,* 641 F.3d at 1019.

An employee may also establish a prima facie case of religious discrimination by showing that he "(1) has a bona fide religious belief that conflicts with an employment requirement, (2) informed the employer of such conflict, and (3) suffered an adverse employment action. If the plaintiff establishes these elements, the burden shifts to the employer to offer a legitimate, nondiscriminatory reason for the adverse employment action." *E.E.O.C. v. Kelly Servs., Inc.*, 598 F.3d 1022, 1030 (8th Cir. 2010) (quoting *Ollis v. HearthStone Homes, Inc.*, 495 F.3d 570, 575 (8th Cir. 2007)).

To establish a prima facie case of Title VII retaliation, the plaintiff must demonstrate that "1) [he] engaged in protected conduct; 2) a reasonable employee would have found [his] employer's retaliatory action materially adverse; and 3) the materially adverse action was causally linked to [his] protected conduct." *Wilkie v. Dep't of Health and Human Servs.*, 638 F.3d 944, 955 (8th Cir. 2011) (citing *Devin v. Schwan's Home Serv., Inc.*, 491 F.3d 778, 785 (8th Cir. 2007)). A "protected activity" can be either opposing an act of discrimination made unlawful by Title VII, or making a charge, testifying, assisting, or participating in an investigation under Title VII. *See Gilooly v. Mo. Dep't of Health & Senior Servs.*, 421 F.3d 734, 739 (8th Cir. 2005).

The plaintiff in an employment discrimination case need not plead facts establishing each element of the prima facie case to survive a motion to dismiss. *Wilson v. Arkansas Dep't of Human Servs.*, 850 F.3d 368, 372 (8th Cir. 2017) (citing *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 511

(2002)). However, "the elements of a prima facie case are relevant to a plausibility determination." *Von Bokel v. McHugh*, No.4:13-CV-2517, 2015 WL 357081, at *6 (E.D. Mo. Jan. 27, 2015) (citing *Rodriguez–Reyes v. Molina–Rodriguez*, 711 F.3d 49, 54 (1st Cir. 2013) and *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012). The Court "applies 'the ordinary rules for assessing the sufficiency of a complaint.'" *Hager v. Arkansas Dep't of Health*, 735 F.3d 1009, 1014 (8th Cir. 2013) (quoting *Swierkiewicz,* 534 U.S. at 511). Thus, a complaint in an employment discrimination case must contain factual allegations that "raise a right to relief above the speculative level." *Id.*

Blanton argues that Plaintiff's Second Amended Complaint fails to state a claim against Blanton upon which relief may be granted, because it fails to include any factual allegations to support a plausible claim that Blanton discriminated against him based on his race, religion, sex, or perceived sexual orientation, or that Blanton retaliated against him for engaging in a protected activity. The Court agrees. The only allegation Plaintiff makes against Blanton is his entirely conclusory assertion that Blanton "wrongfully and discriminatorily" fired him and that Blanton told him in a letter that he was fired because the "employees all refuse to work with you." Plaintiff does not state whether the allegedly discriminatory firing of him was based on his race, his religion, his perceived sexual orientation, or any other protected characteristic, nor does Plaintiff state that it was based on his having engaged in any protected activities. He also does not allege that he had any religious beliefs that conflicted with any of Blanton's employment requirements. Plaintiff does not allege any facts suggesting that any agents of Blanton had any negative feelings about him based on any protected characteristic, does not allege that any agents of Blanton made any negative remarks about any members of any protected class, and does not allege that Blanton treated him differently than it treated similarly situated employees. He also does not state when the alleged

discrimination occurred, and does not state who took part in any allegedly discriminatory decisions. Plaintiff's allegation that Blanton told him in a letter that Blanton fired him because other employees refused to work with him tends to undermine, rather than support, an inference that Plaintiff was fired based on his race, religion, or perceived sexual orientation, or in retaliation for any protected activity.

For the above reasons, even when Plaintiff's Second Amended Complaint is construed liberally, Plaintiff has failed to make any factual allegations that would support a plausible claim that Blanton discriminated against him, the claims against Blanton will be dismissed. *See, e.g.*, *Alexander v. Plasma*, No. 4:16-CV-131-CDP, 2016 WL 3667981, at *1 (E.D. Mo. July 11, 2016) (dismissing *pro se* plaintiff's Title VII claim because "[a]lthough his complaint checks the box for gender discrimination, that is no more than a conclusory statement, with no factual allegations whatsoever to show a [sic] that his gender had anything to do with the circumstances he alleges here"); *Jones v. St. Luke's Hosp. of Kansas City*, No. 14-00526-CV-W-GAF, 2014 WL 11394893, at *2 (W.D. Mo. Sept. 8, 2014) (dismissing *pro se* Plaintiff's Title VII claims because "Plaintiff fails to plead any connection between his termination and his age, gender, or race"). *See also Hager v. Arkansas Dep't of Health*, 735 F.3d 1009, 1015 (8th Cir. 2013) (holding that the district court erred by denying a motion to dismiss a gender discrimination claim under 42 U.S.C. § 1983 where the plaintiff made only conclusory assertions of discrimination and of being treated differently from similarly situated employees; finding that the allegations "fail[ed] to give [the defendant] fair notice of the claim and the ground upon which it rests" and "fail[ed] to raise a right to relief above the speculative level").

**B. The Union's Motion to Dismiss (Doc. 36)**

It appears that Plaintiff is or was a member of the Union. Title VII prohibits several types of discrimination by labor organizations that may be at issue here. First, under Title VII, it is unlawful for a labor organization to "exclude or to expel from its membership, or otherwise to discriminate against, any individual because of his race, color, religion, sex, or national origin" or to "fail or refuse to refer for employment any individual, in any way which would deprive or tend to deprive any individual of employment opportunities, or would limit such employment opportunities or otherwise adversely affect his status as an employee or as an applicant for employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(c)(1)-(2). Second, it is unlawful for a labor organization "to cause or attempt to cause an employer to discriminate against an individual in violation of this section." 42 U.S.C. § 2000e-2(c)(3). *See also Thorn v. Amalgamated Transit Union*, 305 F.3d 826, 832 (8th Cir. 2002) ("A labor organization is liable for an employer's discrimination in the workplace if it causes or attempts to cause the employer to discriminate"). Third, the Eighth Circuit has recognized that "a plaintiff may bring an action under Title VII . . . if his union, for discriminatory reasons, breaches its duty to represent him fairly in the handling of his complaints and grievances." *Markham v. Wertin*, 861 F.3d 748, 759 (8th Cir. 2017) (quoting *Maegdlin v. Int'l Ass'n of Machinists & Aerospace Workers*, 309 F.3d 1051, 1053 (8th Cir. 2002)).

The Court first considers the possibility that Plaintiff is alleging that the Union discriminated against him based on race, religion, sex, perceived sexual orientation, or history of protected conduct in making decisions about whether to refer him for jobs or by taking other action that would adversely affect his status as an employee or candidate for employment. Such a cause of action is suggested by his allegation that the Union is "showing their true heart motive, by their

refusing to simply put this Union Carpenter Plaintiff to work along with other minorities" and that "the Union continued to discriminately lie to particular individuals, to which whom they chose, and NOT place them on jobs." The Union argues that Plaintiff has failed to state a claim because he has failed to allege any specific facts about the Union or its agents that would plausibly suggest that their alleged failure to place him in jobs, or their other actions, were caused by his membership in a protected class or by his having participated in any protected activity. The Court agrees. Aside from his conclusory allegation that the Union "discriminately lie[d]," Plaintiff does not actually allege any facts that would support an inference that the Union discriminated against him based on any particular protected characteristic or characteristics. Although his 2007 Grievance letter indicates that he experienced negative comments from some of his fellow employees and others based on his religion and his perceived sexual orientation, he does not allege similar conduct by the Union or any of its agents.[5] He does not allege any facts suggesting that any agents of the Union ever had or expressed any negative feelings about him based on any protected characteristic or about his having participated in protected activities. He also does not allege that the Union treated him differently than similarly situated individuals who were not Jehovah's Witnesses, who did not share his race, who were not male, who were not perceived as gay, or who had not participated in protected activities. Indeed, it is unclear whether he is claiming that the Union's alleged discrimination against him was based on his race, his religion, his sex, his perceived sexual orientation, or his having participated in protected activities. Moreover, he does not state when the alleged discrimination by the Union occurred or who took part in it. Thus, to the extent that

---

[5] The Court notes that the events alleged in the 2007 Grievance all occurred at least ten years before Plaintiff filed his original Complaint in this case. This would appear to raise a question regarding the timeliness of any claims based on the allegations in the 2007 Grievance. However, because the defendants do not move to dismiss any of Plaintiff's based on the relevant statute of limitations, the Court does not reach this issue.

Plaintiff is alleging that the Union discriminated against him in making decisions about whether to place him in jobs or taking other adverse action against him as a member of the Union, that claim is supported by nothing other than Plaintiff's legal conclusions and speculation, and that claim will be dismissed.

Second, the Court considers the possibility that Plaintiff is alleging that the Union caused or attempted to cause his employer or employers to discriminate against him. Such a claim may be suggested by Plaintiff's allegation that records show that "Union staff admit to telling Union contractors in advance about his being a Jehovah's Witness," an action that was followed by an incident in 2003 in which Union carpenter employees, within the first two minutes of his new job, threatened Plaintiff that if he was a Jehovah's Witness, they would take actions that could maim, paralyze, or kill Plaintiff. This single allegation, taken alone, is not sufficient to plausibly suggest that the Union caused or attempted to cause an employer to discriminate against him. Plaintiff alleges nothing more than that someone at the Union informed an employer that he was a Jehovah's Witness. Nothing in Plaintiff's complaint suggests that this information was conveyed for the purpose of causing Plaintiff to suffer discrimination or was conveyed due to any discriminatory animus. Thus, Plaintiff has not stated a claim that the Union violated Title VII based on causing or attempting to cause his employers to discriminate against him.

Third, the Court considers the possibility that Plaintiff is alleging that the Union, for discriminatory reasons, breached its duty to fairly represent him in his complaints and grievances. "To prevail on [his] breach-of-duty-fair-representation claim, Plaintiff must establish a prima facie Title VII case against Union, showing that: 1) Union breached its duty of fair representation; and 2) its breach was motivated by a discriminatory animus such as race, sex, color, religion, or national origin." *Scruggs v. Amalgamated Transit Union Local 1700,* No. 4:12CV01442 ERW,

2013 WL 4436266, at *5 (E.D. Mo. Aug. 16, 2013) (citing *Carter v. United Food & Commercial Workers, Local No. 789*, 963 F.2d 1078, 1082 (8th Cir. 1992)). The Eighth Circuit has held that a Union's "passive acquiescence" in an employer's discriminatory conduct is not sufficient to support a Title VII claim, because the union does not have an affirmative duty to take steps to remedy employer discrimination. *See Thorn*, 305 F.3d at 832 ("[N]owhere in [Title VII] do we find language imposing upon unions an affirmative duty to investigate and take steps to remedy employer discrimination.").

Plaintiff has not alleged sufficient facts to raise a claim that the Union discriminated against him in representing him in his complaints and grievances. First, it appears that Plaintiff is alleging only that the Union passively failed to investigate employer discrimination. Plaintiff alleges generally that the Union "chose to look out for their Union Contractors against litigation issues and provide no Union representation for the plaintiff and don't look into the 15 years of 'promiscuous hirings and firings' to see if it's discrimination or not," but he does not allege that the Union refused to file any particular grievance or pursue any particular claim against an employer related to any of those hirings or firings. The Union's passive failure to investigate and remedy employer discrimination cannot support a Title VII claim. *See Thorn*, 305 F.3d at 833 (dismissing the plaintiff's Title VII claim against her Unions where the plaintiff alleged that her Unions knew of sexual harassment by union members and failed to take appropriate remedial action, because she did not allege that she requested that the Unions file a sexual harassment grievance against her employer; reasoning that the plaintiff "has only alleged non-actionable passive acquiescence by the Unions").

Second, even assuming *arguendo* that Plaintiff had alleged that the Union breached a duty to represent him, Plaintiff does not allege any facts to suggest that the Union's decisions were

motivated by any discriminatory animus. As discussed above, Plaintiff does not allege any facts suggesting that any agents of the Union ever had or expressed any negative feelings about him based on any protected characteristic or about his having participated in protected activities, and he does not allege that the Union treated him differently than similarly situated individuals who were not Jehovah's Witnesses, who did not share his race, who were not male, who were not perceived as gay, or who had not participated in protected activities. Thus, he cannot state a claim under Title VII. *See Scruggs*, 2013 WL 4436266, at *6 (dismissing a complaint for breach of the duty of fair representation under Title VII where "the Complaint alleges no facts that would allow the Court reasonably to infer that Union did not arbitrate her grievance because of her race, or any other protected basis, or that Union [is] liable for any alleged misconduct").

For all of the above reasons, the Union's motion to dismiss will be granted.

### C. UBC's Motion to Dismiss (Doc. 40)

It appears that UBC is an international labor union. It is unclear from the Second Amended Complaint what the relationship is between UBC and Plaintiff and what the relationship is between UBC and the other defendants. Plaintiff alleges that UBC was aware of his 2007 Grievance; that UBC conducted an investigation lasting more than a year; and that instead of giving the results of its investigation to Plaintiff, the UBC concealed its findings and referred Plaintiff to UBC's lawyers. Plaintiff does not state whether he contacted UBC's lawyers. He also alleges that UBC "may" be covering over their findings of a local affiliate breaking federal laws on discrimination.

It unclear what claims Plaintiff is attempting to bring against UBC. Plaintiff does not allege that UBC was his employer, that UBC played any role in referring him for jobs, or that UBC took any action to cause or attempt to cause his employers or any other entity to discriminate against him. It is possible that Plaintiff is attempting to bring a claim that UBC violated Title VII by

discriminating against him in its handling of his 2007 Grievance. However, Plaintiff has failed to state a claim based on that allegation, because he does not allege any facts that would in any way suggest that UBC's handling of that grievance was motivated in any way by Plaintiff's sex, race, religion, perceived sexual orientation, or history of engaging in protected conduct. *See Scruggs*, 2013 WL 4436266, at *6. To the extent that Plaintiff is attempting to allege that UBC is vicariously liable for the conduct of one or more of the other defendants, Plaintiff does not make any allegations regarding the relationship between UBC and the other defendants that might suggest UBC could be held responsible for their conduct. Moreover, as discussed in the other sections of this Memorandum and Order, Plaintiff has failed to state a claim against the other defendants, so any claim that UBC is vicariously liable for the actions of the other defendants would also fail. To the extent that Plaintiff is attempting to allege that UBC violated some other duty to him, he does not identify any contract or law that would be the source of that duty.

For all of the above reasons, even construing the Second Amended Complaint liberally, Plaintiff has not alleged sufficient factual matter to state a claim for relief that is plausible on its face. Accordingly, UBC's motion to dismiss will be granted.

### D. CJAP's Motion to Dismiss (Doc. 25)

It appears that CJAP is an apprenticeship program in which Plaintiff participated. Although the parties do not address the issue, the Court notes that Title VII prohibits discrimination in apprenticeship programs. *See* 42 U.S.C. § 2000e-2(d) ("It shall be an unlawful employment practice for any employer, labor organization, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs to discriminate against any individual because of his race, color, religion, sex, or national origin in

admission to, or employment in, any program established to provide apprenticeship or other training.").

CJAP argues that Plaintiff's Second Amended Complaint fails to state a claim against CJAP upon which relief may be granted, because it fails to include any factual allegations regarding the nature of the discrimination Plaintiff supposedly suffered, the particulars of how CJAP is responsible for such discrimination, or the legal basis for his claims. The Court agrees.

Plaintiff's Second Amended Complaint contains very few allegations directed to CJAP. Plaintiff states generally that "[a]ny discriminatory apprenticeship program that is allowed to remain registered and open, as if they were exemplary, would be rewarding wrong behavior and would only be permitting the actions to continue on into the future." However, he does not make any specific factual allegations that would suggest that CJAP discriminated against *him* based on his membership in any particular protected class. He does not specify whether the alleged discrimination by CJAP was based on his race, his religion, his sex, his perceived sexual orientation, or any other protected characteristic. He also does not allege that he had any religious belief that conflicted with an employment requirement. Plaintiff also does not allege any facts suggesting that any agents of CJAP had any negative feelings about him based on any protected characteristic, does not allege that any agents of CJAP made any negative remarks about any protected class of which he is a member, and does not allege that CJAP treated him differently than it treated similarly situated employees. He also does not state when the alleged discrimination occurred and and does not state who took part in any allegedly discriminatory decisions.

Plaintiff also alleges that the Union and CJAP "conferred with their counsel and decide 'this could make us look bad' as a 'Parens Patriae' civil case and neglect their responsibility toward the apprentice for all his suffering, despite the laws on Apprenticeship and their responsibility

17

toward the apprentice." As discussed above, it is unclear what "this" is a reference to. Assuming, *arguendo*, that "this" refers to Plaintiff's 2007 Grievance, Plaintiff's complaint might be construed as an attempt to assert a claim that CJAP retaliated against him for filing the 2007 Grievance. However, Plaintiff does not allege that CJAP took any adverse action against him because he filed that 2007 Grievance, only that it "neglect[ed] its responsibility toward him." Even assuming that an apprenticeship program's neglect of its responsibility to an apprentice could form the basis of a retaliation claim, Plaintiff does not specify what responsibility CJAP allegedly had and did not fulfill.

For the above reasons, Plaintiff's vague and conclusory allegations with regard to CJAP are not sufficient to suggest a plausible claim that CJAP discriminated against him in violation of Title VII. His suggestion that CJAP discriminated against him amounts to nothing more than mere speculation. Thus, the claims against CJAP will be dismissed. *See, e.g.*, *Alexander*, 2016 WL 3667981, at *1; *Jones*, 2014 WL 11394893, at *2.

**E. The Federal Defendants' Motion to Dismiss (Doc. 14)**

In their joint motion to dismiss, DOL-ETA, DOL-BAT, and DOL-OA (collectively, the "Federal Defendants") argue that Plaintiff's claims against them should be dismissed because Plaintiff's Second Amended Complaint does not include any allegations against them, does not include any basis for jurisdiction, and does not identify a specific cause of action against them. The Court agrees.

Plaintiff names each of the Federal Defendants as defendants, but it is not at all clear what type of claim or claims, if any, he is attempting to assert against them. In the first paragraph of his Second Amended Complaint, Plaintiff lists all the defendants and asks the Court to "use its own wisdom and discern for itself what the defendants will do to hide what has already transpired and

NOT except [sic] responsibility for what they have done, and or allowed to happen, and or covered up, and or continue to do, and what they want to continue to happen; discrimination in their St. Louis Carpenters Union." He also alleges that "the D.O.L. tells the plaintiff that the Union tells them 'they don't have to provide work' to you, and they negligently fail to listen to them, despite their own D.O.L. 'Apprenticeship Standards Agreement' given to the Union." Plaintiff does not identify any duty D.O.L. owed to him, nor does he specify what responsibility to him any of the Federal Defendants allegedly had and did not fulfill. The Court cannot discern from these vague and conclusory allegations what claims Plaintiff is attempting to assert against any of the Federal Defendants. Accordingly, the Federal Defendants' motion to dismiss will be granted.

### F. Plaintiff's Motion to Amend His Second Amended Complaint (Doc. 49) and Defendants' Motion to Strike Plaintiff's Motion (Doc. 50)

On May 4, 2018, Plaintiff filed a "Motion to Add Defendant Carpenter Local #97," which the Court construes as a motion for leave to file a Third Amended Complaint. Plaintiff seeks to add his local union, Local #97 (formerly known as Local #47). He states that he makes this request after learning about other cases involving union locals, including a $1,650,000 settlement of claims against a local in a case arising in the Southern District of New York.

Under Rule 15(a)(2), "a party may amend its pleading only with the opposing party's written consent or the court's leave," and "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). However, the Court "may properly deny a party's motion to amend its complaint when such amendment would unduly prejudice the non-moving party or would be futile." *Popoalii v. Corr. Med. Servs.*, 512 F.3d 488, 497 (8th Cir. 2008)

Even under this liberal standard, Plaintiff has failed to establish that the Court should grant him leave to amend his complaint. First, the Court finds that the amendment would be futile. Plaintiff does not attach a proposed amended complaint to his motion, and it is not clear what

specific claims Plaintiff would allege against Local #97 if it were added as a party. The motion consists largely of irrelevant descriptions of a case against another local in New York and a description of a Missouri state case apparently related to Plaintiff's unemployment benefits. To the extent that Plaintiff does describe wrongdoing by Local #97 or the other Defendants, his allegations are largely vague, confusing, and conclusory, and suffer from the same defects as the claims in his Second Amended Complaint. Second, the Court finds that the proposed amendment would unduly prejudice Defendants. Plaintiff's case has been pending more than a year, he has already filed three versions of his complaint, and the defendants have already filed and fully briefed five motions to dismiss that were ripe for ruling well before Plaintiff filed the instant motion for leave to amend. Plaintiff provides no explanation for his failure to add Local #97 as a party before now. It would be unjust to require the Defendants to address yet another complaint at this late stage, particularly when Plaintiff's motion does not indicate that any amended complaint he files will be any clearer than those he has already filed. For the above reasons, Plaintiff's Motion to Add Defendant Carpenter Local #97 will be denied. Defendants' Motion to Strike Plaintiff's Request to Add Party will be denied as moot.

### V.    CONCLUSION

For all of the above reasons,

**IT IS HEREBY ORDERED** that the motion to dismiss filed by Blanton Construction Co. (Doc. 13) is **GRANTED**.

**IT IS FURTHER ORDERED** that the motion to dismiss filed jointly by Defendant Department of Labor, Bureau of Apprenticeship and Training, Defendant Department of Labor, Office of Apprenticeship, and Defendant Department of Labor, Employment and Training Administration (Doc. 14) is **GRANTED**.

**IT IS FURTHER ORDERED** that the motion to dismiss filed by Defendant St. Louis Carpenters Joint Apprenticeship Program (Doc. 25) is **GRANTED**.

**IT IS FURTHER ORDERED** that the motion to dismiss filed by Defendant St. Louis-Kansas City Carpenters Regional Council (Doc. 36) is **GRANTED**.

**IT IS FURTHER ORDERED** that the motion to dismiss filed by Defendant United Brotherhood of Carpenters and Joiners of America (Doc. 40) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Add Defendant Carpenter Local #97 (Doc. 49) is **DENIED**.

**IT IS FURTHER ORDERED** that the Joint Motion to Strike Plaintiff's Request to Add Party filed by Defendant United Brotherhood of Carpenters and Joiners of America and Defendant St. Louis Carpenters Joint Apprenticeship Program (Doc. 50) is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that the motion to dismiss filed by St. Louis-Kansas City Carpenter Regional Council that was directed toward an earlier version of Plaintiff's complaint (Doc. 18) is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that the motion to dismiss filed by United Brotherhood of Carpenters and Joiners of America that was directed toward an earlier version of Plaintiff's complaint (Doc. 31) is **DENIED AS MOOT**.

**IT IS FINALLY ORDERED** that this case is **DISMISSED**, with prejudice. The Court will enter a separate Order of Dismissal.

_____
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 11th day of July, 2018.